COST *v.* NEWPORT BUILDERS' SUPPLY & HARDWARE COMPANY.

Opinion delivered February 17, 1908.

1. MECHANICS' LIEN—ABANDONMENT BY CONTRACTOR.—In a suit to enforce a lien for materials furnished for the erection of a building, where the contractor abandoned the contract during the progress of the work, it was not competent for the defendant to prove that he paid out more than the contract price for labor and materials used in finishing the building if he fails to prove that such expenditures were made in completing the building according to the contract. (Page 410.)

2. SAME—LEGALITY OF PAYMENTS TO CONTRACTOR.—Kirby's Digest, § 4975, providing "that the owner, employer, or builder shall pay no money to the contractor until all laborers and mechanics employed on the same and all material furnished shall have been paid for work done and materials furnished," intended to prohibit payments to the contractor for his own use, and not payments for labor and materials for which the right to a lien has accrued. (Page 411.)

3. SAME—REJECTION OF TESTIMONY—HARMLESS ERROR.—In an action to enforce a mechanic's lien, defendant was not prejudiced by the rejection of testimony that a certain amount paid by him directly to the contractor was used by the contractor in paying for labor and material if the only effect such evidence could have had would have been to reduce the balance on the contract price to a sum which would still have been sufficient to satisfy plaintiff's lien. (Page 411.)

4. SAME—EFFECT OF STIPULATING AGAINST LIENS.—A stipulation in a building contract between the owner and contractor that no liens for labor or materials should be filed against the building is not binding upon a sub-contractor or material furnisher unless he has actual notice thereof. (Page 412.)

Appeal from Lawrence Circuit Court; *Frederick D. Fulkerson,* Judge; affirmed.

*Cunningham & Smith* and *Chas. Coffin,* for appellant.

1. The statute, Kirby's Digest, § 4970, is in derogation of the common law, and should be strictly construed. Under it the lien of the contractor, sub-contractor and materialman each rests upon the contract between the owner and the original contractor, and all subcontractors and materialmen are bound to take notice of all the terms of the contract. A stipulation between the owner and contractor that no liens shall be allowed against the property will bind subcontractors and materialmen. 19 Am. St. Rep. 691; 43 *Id.* 789; 42 *Id.* 815.; 77 Ark. 159.

2. There was error in excluding from the jury the conversation of Cost with Stewart, constituting a waiver of lien on the part of appellee. Laborers or materialmen may waive their liens for labor or materials, and such waiver may be in parol. 20 Am. & Eng. Enc. of L. (2 Ed.), 361-2. Moreover, since it is undisputed that appellant contracted with Stewart on the faith of the statement that he was the president and general manager of appellee company and as such had full power to, and would, waive the lien, upon which statement and the circumstances that Stewart was apparently in full control of the establishment at the time and was in fact a director of the company, appellant relied to his prejudice, appellee is clearly estopped to assert a lien. 78 Ark. 412; 79 Ark. 374; 11 Am. & Eng. Enc. of L. 430; 7 Am. St. Rep. 125.

3. The court's instructions, 1 and 2, are on the theory that payment to the contractor of any amount will defeat the right

of the builder to defend under the statute, Kirby's Digest, § 4975, regardless of whether the lien holder was prejudiced by such payment or not. It is only when the payment accrues to the personal benefit of the contractor that the builder or owner of the house is not allowed credit for it. 71 Ark. 35; 77 Ark. 158.

*Gustave Jones,* for appellee.

1. It is conclusively shown that Stewart was not the president and general manager of the company, and no attempt was made to show that he was authorized to waive a lien for the company.

2. On the plea that he had already paid out $4,621.82, appellant wholly failed to bring himself within the law. He made no claim nor offer of proof that this amount was paid out under the contract. It is undisputed that he paid the contractor $1,600. If appellant paid out the amount first stated, the latter amount should be deducted, and the remainder taken from the contract price, which leaves more than enough to pay appellee. There is no plea that appellant paid out anything for valid claims against the building arising under the contract, or that they were paid necessarily and independently of the contract. The rule is not as contended for by appellant in the Long case, 77 Ark. 158, and that overrules the Barton case, 71 Ark. 35, where it conflicts. The statutes expressly relieve the builder of the task of "searching out the laborer," forbid his paying the contractor until the laborer and material man are paid, furnish him a method of informing himself who they are and what amounts are due, and enable him to recover back from the contractor any amount overpaid. Kirby's Dig. § § 4980, 4975, 4978. His duty is clear. He violates it at his peril.

McCulloch, J. This is an action instituted by appellee against appellant to enforce a lien for building material furnished by it to one Stewart for use in construction of a storehouse for appellant. The amount of the account sued on is $1,579.13.

Appellant in his answer alleges that the contract price of the building was $4,800, and that he had already paid out the sum of $4,621.82 for labor and material, and that no part of said sum had been paid to the contractor, Stewart, for his own use.

Appellant in support of this defense offered to prove by witnesses that he had paid out more than the contract price for labor and material used in the construction of the building. The evidence adduced showed that $1,600 of the amount was paid direct to Stewart's agent, but was used in paying for labor and material. The court refused to admit any of this evidence.

Appellant did not prove, nor offer to prove, that these payments (except the $1,600) were made under the contract for labor or material, nor that the building was completed under the contract or according to the contract. On the contrary, the evidence discloses the fact that the contractor, Stewart, abandoned the contract sometime during the progress of the work on the uncompleted building, and that appellant hired mechanics and laborers and purchased material to complete the building. The proffered testimony was to show that in doing this he paid out in all (including the $1,600 paid to Stewart) more than the contract price. But, as we have already said, he failed to show, and did not attempt to show, that he paid these amounts in completing the buildings in accordance with the original contract. The evidence shows affirmatively that changes were made in the plans, but it does not show the difference in the cost of the building, if any, brought about by these changes. Appellant simply offered to show that he paid out more for labor and material than the contract price with Stewart. This was not sufficient to bring himself within the rule laid down by this court in *Long* v. *Charles T. Abeles & Company*, 77 Ark. 156. In that case the court held that where a building contractor abandons his contract the owner has the right to complete the building according to contract, and to deduct the cost thereof from the contract price, before he can be required to account to lienors for labor performed for or material furnished to the contractor; and that after this is done the balance due on the contract price must be prorated upon accounts for labor and material furnished under the contract to the contractor before he abandoned the work. This includes, of course, the accounts paid by the owner for the contractor, as they, too, would have been liens on the building, to the extent of their *pro rata* shares, if he had not paid them. The court said: "Appellee, having complied with the law as to notice and the filing of its

account with the clerk (which is not denied), and having shown that it furnished the material to the contractor which went into appellant's building, and that the amount charged for such material is less than the contract price, and has not been paid, establishes *prima facie* its right to a lien, and casts upon appellant the burden of showing to the contrary."

For aught we know to the contrary, appellant may have completed his building, after the abandonment by the contractor, according to a more expensive plan than contemplated by the original contract; hence it was no defense to appellee's assertion of a lien to show merely that he paid out more than the contract price for labor and material.

It was competent for appellant to show that the amount ($1,600) paid direct to the contractor was used in paying for labor and material. The statute, it is true, provides "that the owner, employer, or builder shall pay no money to the contractor until all laborers and mechanics employed on the same and all material furnished shall have been paid for work done and material furnished." Kirby's Digest, § 4975. But this language of the statute should not be construed literally. What it intends, manifestly, to prohibit is payment direct to the contractor for his own use, and not that which is actually used in making payments for labor and material already performed, and for which the right to a lien under the statute has accrued.

Appellant was not, however, prejudiced by the rejection of this testimony; for, if it had been admitted, the only effect it could have had would have been to reduce the balance on the contract price to $3,200, which was more than enough to satisfy appellee's lien.

Appellant set forth in a separate paragraph of his answer the following as a defense: "That at the time the contract was made and the materials furnished T. B. Stewart was president and general manager of the plaintiff company, and as such president and general manager stated he had such materials as would be needed in the construction of said building, and that same would be furnished without any purchase from outside parties, and that there would be no lien attach for same, and the plaintiff company is estopped by such representations of its president and general manager." He asked an instruction in

line with the above allegation, which the court refused, and error is assigned. There was no evidence to sustain this defense, and the court properly refused to submit it to the jury. The undisputed evidence established the fact that Stewart had, before this transaction, resigned his position as president and general manager of appellee corporation, and there is no evidence that he had any authority to bind the corporation.

It is argued that, aside from Stewart's lack of authority to bind appellee to the terms of the contract, the evidence shows that the verbal contract between Stewart and appellant stipulated, in effect, that no liens for labor or material should. be filed against the building, and that appellee was precluded by this stipulation from asserting a lien, even though Stewart had no authority from appellee to enter into such a contract. In some States it has been held that a stipulation in a building contract between the owner and principal contractor against liens is binding on all persons who furnish labor or material, and precludes them from asserting a lien on the building. It is so held in the State of Pennsylvania. The Supreme Court of that State first laid down that rule in *Schroeder* v. *Galland,* 134 Pa. St. 277, and it has been steadily followed by that court in a long line of decisions extending down to a recent date. The statutes in that State provide for registration of building contracts, and the court, in reaching a conclusion on the question, proceeded upon the theory that, as the sub-contractor is chargeable with notice of the terms of the contract when he performs labor or furnishes material, he is bound by the stipulation against liens. The same conclusion was reached in *Seeman* v. *Biemann,* 108 Wis. 365. We think, however, that the contrary view is supported by better reason and by the clear weight of authority, and that the correct construction of statutes similar to ours is that a subcontractor is not bound by such a stipulation unless he has actual notice thereof. *Smalley* v. *Gearing,* 121 Mich. 190; *Whittier* v. *Wilbur,* 48 Cal. 175; *Mile* v. *Coutts,* 20 Mont. 47; *Jarvis* v. *State Bank,* 22 Col. 309; *Stewart Contracting Co.* v. *Trenton & N. B. Rd. Co.,* 71 N. J. L. 568; *Norton* v. *Clark,* 85 Me. 357.

The statutes of this State give a lien directly to "every mechanic, builder, artisan, workman, laborer or other person

who shall do or perform any work upon, or furnish any material * * * for, any building, erection * * * under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions of this act." Kirby's Digest, § 4970. The only limitation found in the statute is that the contractors, subcontractors or laborers or material furnishers shall not be given a lien for any greater amount in the aggregate than that contracted for between the employer and contractor. Kirby's Digest, § 4975. It is thus seen that the statute gives an independent lien to each of the classes named, under the sole limitation that the aggregate shall not exceed the amount contracted for between the employer and principal contractor; and a person of either class cannot be precluded, without his consent, from asserting a lien by any act or agreement of another.

Affirmed.