## KERFOOT v. NEAL et al.

No. 20791.   March 6, 1934.

Rehearing Denied April 10, 1934.

Waldrep & High, Arrington & Evans, and M. L. Hankins, for plaintiff in error.

Chas. E. Wells, E. C. Stanard, Leonard Carey, and Norton Stanard, for defendants in error.

ANDREWS, J. M. E. Neal, one of the defendants in error, commenced an action against C. W. Kerfoot, the Kiowa Lumber Company, Wallace Estill, B. Salyer, H. B. Jones, and others, by which he sought a judgment for an amount due him for labor performed in the construction of a dwelling house on the real estate involved in this action and for the foreclosure of a laborer's lien on that real estate, together with the improvements thereon. The Kiowa Lumber Company, Wallace Estill, and others filed cross-petitions praying for the same kind of relief. The defendant C. W. Kerfoot denied all of the claims, and contended that if the claimants were entitled to any lien, it was on the improvements and not on the real estate. The trial court rendered a judgment against B. Salyer and H. B. Jones for the amount of each of the claims and against all of the defendants, establishing coequal liens for those amounts and ordering a foreclosure thereof against the real estate and the improvements. C. W. Kerfoot appealed to this court.

This controversy arose out of a contract between C. W. Kerfoot, B. Salyer, H. B. Jones, and the Kiowa Lumber Company, which the trial court found to be as follows:

"This contract made and entered into by and between C. W. Kerfoot, party of the first part, and B. Salyer and H. B. Jones, parties of the second part, witness: Said C. W. Kerfoot, party of the first part, sell to said Salyer and Jones, parties of the second part, the following described lots for sixty-five hundred dollars ($6,500): Lots one to

four (1 to 4) inclusive, block three (3), three to six (3 to 6) inclusive, block twelve (12), three to eight (3 to 8) and eleven to sixteen (11 to 16) inclusive, in block seventeen (17), all these lots in Dexter Second addition, in the city of Shawnee.

'The conditions of this are as follows: That said Salyer and Jones are to build one (1) 6-room house and three (3) 5-room houses on lots one (1), two (2) three (3) and four (4) in block three (3) in Dexter Second addition to the city of Shawnee. The said Salyer and Jones are to buy all material for these four (4) houses from the Kiowa Lumber Company, a corporation, doing business in the city of Shawnee, Okla. The Kiowa Lumber Company agreeing to furnish the material for these houses on a competitive cash price and after these four (4) houses are completed, if the said Salyer and Jones are not able to borrow enough money to pay the said material bill, and at least two hundred fifty dollars ($250) on each lot, the said Kiowa Lumber Company herein agrees to carry these lumber bills on a first mortgage for twelve (12) months at eight per cent. (8%) interest. If, after these four houses are completed, a satisfactory mortgage is not arranged, or if there has not been a satisfactory sale on these four houses, the said Salyer and Jones may limit the purchase of these lots to the said four lots upon which these houses are built by paying ten dollars ($10) a front foot, or two thousand dollars ($2,000) for these said four lots. The payment may be made as follows: First mortgage to the Kiowa Lumber Company for all the building material, and the second mortgage to the said C. W. Kerfoot, for two thousand dollars ($2,000), the full purchase price of these lots, and this closes the contract in full; but if there is a satisfactory arrangement made, then the said Salyer and Jones may take the full purchase as agreed above and the title is made to the said Salyer and Jones. The said Salyer and Jones are to furnish all the labor for building these houses, without pay, until said Kiowa Lumber Company is paid in full and said C. W. Kerfoot is paid as set out in the above paragraph, and are to relinquish all right to file all labor lien or to relinquish all right to have any of employees file labor lien on any of these houses.

"The said C. W. Kerfoot, party of the first part, hereby agrees to give one (1) abstract on all these lots showing good and sufficient title, and clear from any debt whatever, except taxes for nineteen hundred twenty-seven (1927) and thereafter.

"Should said Salyer and Jones be unable to make a loan for sufficient amount to pay said Kiowa Lumber Company material bill and contract to C. W. Kerfoot for one-half of lots, then if said Salyer and Jones would be able to make a first mortgage to some building and loan company, or some individual loan company for enough money to pay said Kiowa Lumber Company bill, then C. W. Kerfoot would come in and take a second mortgage for the price of his real estate, subject to the first loan, made direct to any other loan company in place of the Kiowa Lumber Company for the actual material bills.

"Said C. W. Kerfoot herein agrees that said Salyer and Jones may take all of lots one (1), two (2), three (3) and four (4) block three (3), three (3), four (4), five (5) and six (6), block twelve (12), fifteen (15) and sixteen (16), block seventeen (17), all these in Dexter addition, for the total sum of five thousand dollars ($5,000) or said Salyer and Jones may have privilege of taking lots three to eight (3 to 8) and eleven to thirteen (11 to 13) inclusive, block seventeen (17), for the sum of ($1,500) fifteen hundred dollars.

"This contract drawn this 29th day of August, 1927. Each party to have a copy thereof."

The trial court further found:

"* * * That Salyer and Jones were unable to negotiate a loan in sufficient amount to pay the material and labor bills on the said building, and that they failed to negotiate any loan thereon for the reason that the property was incumbered by an oil and gas lease prior and superior to any rights they might acquire under their contract with Kerfoot."

The findings are sustained by the evidence.

Herein the plaintiff in error contends that that contract is an executory contract for the sale of real estate, and that since he did not contract any of the indebtedness, the same could not constitute a lien upon the real estate; that the Kiowa Lumber Company waived its right to a lien by agreeing to accept a mortgage, and that the cross-petition of the Kiowa Lumber Company was premature in that the Kiowa Lumber Company had agreed to carry its claim for one year. It makes other contentions which are not supported by citation of authority, and which therefore are considered waived.

The contract in question is more than an executory contract for the sale of real estate. It is as well a contract by which the Kiowa Lumber Company was to furnish material for which it was to be paid (a) from the proceeds of the sale of the property to some person other than the parties to the contract, (b) from money to be borrowed on the property by Salyer and Jones, or (c) by a note secured by a first mortgage due in twelve months. There is nothing therein

to indicate that the Kiowa Lumber Company was not to have pay for the material to be furnished by it or that the property was not to be liable for the payment thereof. C. W. Kerfoot was a party to that agreement. He cannot now be heard to say that the property as well as the improvements constructed thereon are not liable for the payment of the amount due the Kiowa Lumber Company. We held in Kerfoot v. Salyer, 146 Okla. 194, 293 P. 1033, that:

"Under that contract the Kiowa Lumber Company was to have a first mortgage or was to be paid from the proceeds of a first mortgage to some building and loan company. There is nothing in the contract to show a waiver of the right to a lien by the Kiowa Lumber Company as against a party to the same contract.

"At the time of the completion of the building the rights of the parties, under the rule announced by this court in Okmulgee Plumbing Co. v. Comstock, 125 Okla. 245, 257 P. 320, were as follows: The plaintiff, the owner of the land, had made an executory contract for the sale and had consented in writing for Salyer and Jones, the executive vendees, to purchase material from the Kiowa Lumber Company for the erection of improvements thereon. He had waived his vendor's lien in favor of the Kiowa Lumber Company. The Kiowa Lumber Company was entitled to a first lien."

We so hold at this time. While the Kiowa Lumber Company agreed in the contract to accept a first mortgage on the property, C. W. Kerfoot therein agreed to accept a second mortgage on the property for the purchase price thereof. The contract is as binding upon the one as upon the other. C. W. Kerfoot cannot violate the contract by claiming to be the owner of the property and, at the same time, insist that the Kiowa Lumber Company must conform to its agreement to take a mortgage upon the property. If, under the terms of the contract, the Kiowa Lumber Company is required to take a mortgage upon the property, then, under the terms of the contract, C. W. Kerfoot is required to take a mortgage on the property, and the Kerfoot mortgage will be subject to the Kiowa Lumber Company mortgage. We have searched the record and we find no tender of the note or mortgage to the Kiowa Lumber Company. While C. W. Kerfoot objected to the Kiowa Lumber Company maintaining its cross-petition, he did not tender to the Kiowa Lumber Company the mortgage which he agreed the Kiowa Lumber Company was to have. We find no error in the judgment of the trial court as to the issue between C. W. Kerfoot and the Kiowa Lumber Company.

The record shows that C. W. Kerfoot did not contract the indebtedness due to the other lien claimants. But it shows that that indebtedness was contracted pursuant to the written contract hereinbefore set forth, and that, during the course of the construction and in order that the construction might proceed, he agreed to pay the bills for the construction thereof. In view of that testimony, and in view of the testimony that the entire arrangement failed by reason of the failure of C. W. Kerfoot to clear the title to his property of the oil and gas lease thereon, and under the contract as hereinbefore set forth, the trial court did not err in establishing the liens upon the real property as well as upon the improvements.

The defendant in error prayed for a judgment on the supersedeas bond. Had a supersedeas bond been given by C. W. Kerfoot to supersede the judgment rendered against him, that is, for the foreclosure of the liens against his property, this court would have been without jurisdiction to render a judgment thereon. The supersedeas bond in this case recites the rendition of a judgment against C. W. Kerfoot for the sum of $1,440.45 and costs, and the obligation of the bond is to pay "to the said obligees condemnation money and costs in case the judgment or final order shall be adjudged against him, or affirmed in whole or in part." Under that state of the record, judgment is rendered on the supersedeas bond against the principal and sureties thereon in favor of the obligees named therein, in the sum of $1,440.45, with interest and costs as provided by law, the obligees to furnish the journal entry of judgment in accordance herewith, the execution thereon to issue out of the district court of Pottawatomie county, Okla.

We find no error in the judgment of the trial court, and it is in all things affirmed.

RILEY. C. J., CULLISON, V. C. J., and OSBORN and BUSBY, JJ., concur.