Adrian F. STATSER and Dicie Statser, his wife, Plaintiffs in Error,

v.

CHICKASAW LUMBER COMPANY, H. G. Singley, et al., Defendants in Error.

No. 37279.

Supreme Court of Oklahoma.

July 8, 1958.

John B. Ogden, Oklahoma City, for plaintiffs in error.

Justin Hinshaw, Norman, Felix, Douglass & Griffin, by Kenneth J. Wilson, Oklahoma City, Luttrell & Luttrell, Norman, Paul W. Updegraff, Norman, for defendants in error.

JACKSON, Justice.

Defendants Adrian F. Statser and Dicie Statser appeal from a judgment establishing liens for labor and material against certain real property of which they are and were at all times involved the record owners. The labor was performed and the material furnished pursuant to contracts with the defendants H. G. Singley and Berneice L. Singley, which contracts were made while the Singleys were in possession of the real property under an executory contract of exchange.

The contract of exchange was entered into April 24, 1953. The contract provided that defendants Statsers, who owned the property involved in this action located in Oklahoma County, would exchange it for property owned by defendants Singleys in Norman, Oklahoma and $8,200 difference. The contract was to be closed by exchange of deeds on June 1, 1953, unless the time was extended to permit perfecting of title.

On April 25, the day following the execution of the contract, the Statsers permitted the Singleys to go into possession of the property. The Singleys immediately began the construction of a drive-in restaurant, contracting with the present lien claimants for the necessary labor and material. The Statsers were fully aware of the construction operations and made no objections during the course of construction, nor did they advise any of the lien claimants that the Singleys were not the owners of the property. On the other hand, although the Statsers' legal title appeared of record, none of the lien claimants contacted them. The Singleys contracted with the various lien claimants in their own name and their individual capacities, and all but one of the lien claimants named the Singleys as owners of the property in their lien statements.

One claimant named Statsers and Singleys both as owners, but testified that it was assumed at the time the material was furnished that Singleys owned the property.

The Singleys failed to perform, the exchange was never consummated, and the contract has been rescinded by judgment of the District Court.

The instant foreclosure action was filed by the plaintiff Chickasaw Lumber Co. Numerous other lien claimants were joined as defendants and each cross-petitioned for foreclosure of their respective liens.

The trial court found that the improvements were made with the full knowledge, consent and approval of the defendants Statsers, and made specific conclusions of law substantially as follows: (1) That the contracts between the Singleys and the lien claimants were adopted, accepted and ratified by the Statsers as and for their own contracts with the lien claimants; (2) That the Statsers were estopped to deny that the Singleys had actual authority to make contracts with the lien claimants, and were estopped to deny that the Singleys had authority to subject the real property and improvements thereon to the liens; (3) That the lien claimants were entitled to an equitable lien on the realty.

The trial court then entered judgment against the Singleys *and the Statsers* for the full amount of their respective claims and established same as liens on both the real estate and the improvements. Two issues are presented:

First Issue: Are the lien claimants entitled to a lien on the real estate including the improvements?

Second Issue: If the claimants are not entitled to a lien on the real estate, are they entitled to a lien on the improvements separate from the real estate?

As to the first issue we are of the opinion that the lien claimants failed to establish their right to liens on the real estate. The lien granted mechanics and materialmen is of statutory creation and in derogation of the common law. In Pace v. National Bank of Commerce of Tulsa, 190 Okl. 503, 125 P.2d 178, 179, we said:

"Liens for material and labor are entirely of statutory creation, and the right to claim the same is not to be extended beyond the plain statutory provisions."

In American Tank & Equipment Co. v. T. E. Wiggins, 170 Okl. 504, 42 P.2d 115, 117, it is held:

" * * * The statute in question, being a remedial one, would be entitled to liberal construction, but the rule in such cases seems to be that liberality should be given to the enforcement of the lien, after the lien has clearly attached, and not in determining the question as to whether or not a lien exists."

█ We must, therefore, turn to the statutes in order to determine the prerequisites to the creation of a mechanics' and materialmen's lien. Title 42 O.S.1951 § 141, specifically requires a contract with the owner of the realty as a condition to the creation of a mechanics' and materialmen's lien against the realty. In Deka Development Co. v. Fox, 170 Okl. 228, 39 P.2d 143, it is held in the first paragraph of the syllabus as follows:

"The right of a materialman to a lien depends upon contract. Such contract may be either oral or written. If a lien is asserted against *real estate*, the contract must be made by the owner or his duly authorized agent." (Emphasis supplied.)

It is clear that plaintiff and the other lien claimants did not contract directly with the Statsers who owned the real estate; therefore, they did not acquire a lien on the real estate unless it can be said that the Singleys' contracts became the contracts of the Statsers under some theory of agency.

The trial court apparently found the necessary agency under two theories—first, that the Statsers had ratified Singleys' contract—second, that the Statsers were estopped to deny that Singleys had the necessary authority.

■ With reference to ratification we first observe that the doctrine of ratification in the law of principal and agent is applicable only to situations wherein one *assumes* or *purports* to act as an agent. In Madill State Bank v. Weaver, 56 Okl. 183, 154 P. 478, it is held in the second paragraph of the syllabus as follows:

"The rule as to 'ratification' is applicable only where the act alleged to have been ratified by another purported to have been for or in behalf of such other."

In the case at bar there is a complete absence of facts to indicate that Singleys assumed to act as the agents of the Statsers. On the contrary they purported to act solely on their own behalf and none of the claimants were led to believe otherwise.

■ One of the principal requirements of ratification is that the alleged principal have knowledge of all material facts. Franco-American Securities v. Guillot, 186 Okl. 302, 97 P.2d 756. It is clear that one such material fact would be the fact that the alleged agent *purported* to bind the alleged principal. Otherwise, there would be no occasion for the alleged principal to ever consider ratification. Since Singleys did not purport to act as Statsers' agent it is certain there was nothing to ratify. The above reasoning points up the controlling distinction between the instant case and Williamson v. Winningham, 199 Okl. 393, 186 P.2d 644, relied upon by plaintiff and the other lien claimants. In that case the contracting party purported to act as the agent of his son. The son later learned of this fact and ratified the contract.

■■ Are the Statsers estopped to deny that Singleys had authority to bind them and their real property? In urging this proposition the lien claimants rely upon and quote the language used in Bragdon v. McShea, 26 Okl. 35, 107 P. 916, as follows:

"In order for the silence of a party to constitute an estoppel against him, it must have occurred under such circumstances as to have made it his imperative duty to speak, and the party in whose favor the estoppel is invoked must have been misled into doing that which he would not have done but for such silence."

The Statsers had no duty to advise each and every person of their ownership as that fact was of record in the County Clerk's office. In Carter v. Simpson, Okl., 302 P.2d 980, 982, we said:

"The evidence in the instant case clearly discloses that plaintiff was contracting only with the lessees. Though he might not have had actual notice and knowledge of the lease under which the Bowers were operating he was put on constructive notice and inquiry by the public records showing that the Bowers did not own the property."

Furthermore there is nothing in the record to indicate that Statsers knew, or should have known, who the individuals were that would be called upon to furnish labor and material. Nor does the record support the lien claimants' assertion that the Statsers knew the Singleys were representing themselves to be the owners of the property. Title 42 O.S.1951 § 141, specifically provides for a lien on the improvements separate from the real estate where the person with whom the claimants contract does not own the legal title. This provision of the statute provides three salutary results. First, the owner of the real estate is prevented from becoming unjustly enriched at the possible expense of another. Second, the mechanics and materialmen are given a relative degree of security for their contributions to such improvements. Third, the owner of the land is relieved from the burden of keeping in constant contact with the various individuals who might incur charges on a project commenced and controlled by another. The party who stands to suffer to the greatest extent is the defaulting vendee who is placed in such position as the result of a calculated risk.

In Antrim Lumber Co. v. Wagner, 175 Okl. 564, 54 P.2d 173, 175, in discussing the provision of the statute allowing a lien on

the improvements separate from the real estate, in connection with a claimed estoppel against the vendor, this court said:

"* * * Having acquired an equitable interest in the premises by the contract of sale, McNutt had a right to improve them as he saw fit. However, he could not, by improving the premises, divest his grantor of her vendor's lien. She was under no obligation to speak for the reason that she had a right to consider such improvements as were being made, as being made in accordance with law. * * *."

In Pirtle v. Brown, 141 Okl. 227, 284 P. 898, 899, the lien claimants contended that the executory vendor was estopped to deny their liens. The court said:

"Although the material and labor may have been furnished with the knowledge of the owner, it is not sufficient to establish a lien upon the owner's interest, although made with one in possession under a contract of sale. * * *."

We hold that the lien claimants did not acquire a lien against the real estate.

We pass now to the question of whether the claimants acquired liens against the improvements separate from the real estate. None of the claimants asserted, in their pleadings, a lien on the improvements separate from the real estate. However, in Blalack v. Hoshall's A & A Plumbing Co., Okl., 318 P.2d 878, we held that the claimant was entitled to a lien on the leasehold estate despite the fact that it erroneously claimed a lien on the entire freehold estate as such. See also Whitfield v. Frensley Bros. Lbr. Co., 141 Okl. 44, 283 P. 985.

Had the claimants merely repaired or made minor alterations to existing structures on the premises, they would not have acquired liens on the improvements separate from the real estate. Pirtle v. Brown, supra; Sisemore v. Voelkle, Okl., 312 P.2d 922, 925. In the last cited case we said:

"While mechanics and materialmen may acquire a lien by contract with a vendee in possession under an executory contract of sale in the absence of a contract with the vendor, such lien is limited to new improvements placed upon the property, * * *."

A simple reading of the statute does not necessarily compel this conclusion, and the various reasons advanced as the basis for such rule are somewhat confusing. It appears, to a certain extent, that the difficulty has arisen by reason of a failure to separate the question of whether there is a lien on the improvements from the consideration of the lien which attaches in any event to the interest or estate of the vendee or lessee. The lien extends to the *interest* of the vendee under the first sentence of section 141, because as to such interest the mechanic or materialman is contracting with an *owner*. Such lien attaches without regard to the second sentence which provides for a lien on the improvements separate from the real estate. But, on the other hand, even if the lessee or vendee has no transferrable interest in a new building erected on the premises, the lien will attach to the building by reason of the second sentence *in addition* to whatever interest or estate the lessee or vendee has. Thomas v. Soper Lumber Co., 69 Okl. 197, 171 P. 736.

The basic reason for concluding that mere repairs and alterations to an existing structure will not support a lien against such structure is that such improvements are not removable without damage to the original structure and the Legislature obviously did not intend that the lien in such case should extend to the entire existing structure without a contract with the owner of same. This would be in direct conflict with the spirit of the statute. We must, therefore, determine whether the labor performed and material furnished in the instant case resulted in the erection of a new building, or mere repairs to or alterations of an existing building.

Prior to the time the defendants Singleys entered into possession there were two structures located on the premises.

Both were in a dilapidated condition. The trial court found that the "existing buildings" were torn down and a new building erected. One of the buildings was torn down but the evidence discloses that at least part of the other building was left standing and incorporated into the finished structure. In any event, the trial court's finding is tantamount to a finding that the original structures lost their identity by being merged into a new building. The evidence clearly supports such finding. In Home Building and Loan Ass'n v. White, 141 Okl. 240, 284 P. 889, we held in the second paragraph of the syllabus as follows:

> "Where an original building 22 by 24 feet, consisting of three rooms, by the addition of 14 feet at the front and 8 feet at the back, has been converted into a two four-room apartment house and is completely changed in its external appearance, the same constitutes a 'new building' as distinguished from an altered or repaired building."

Though the cited case involved the relative rights of labor lien claimants as against a prior mortgagee, the reasoning therein is applicable to the instant case. There, as in this case, the lien claimants were not entitled to a lien for alterations or repairs, but were entitled to a lien if the finished structure was a new building.

In view of the trial court's finding, which was amply supported by the evidence, we hold that the lien claimants were entitled to a lien on the improvements separate and apart from the real estate.

In Home Building and Loan Ass'n v. White, supra, the court granted liens on the improvements in favor of the lien claimants, but held that the mortgagee was entitled to priority to the extent of the value of the original improvements and remanded the case to the trial court for a determination of such value.

In our opinion the defendants Statsers (owners of the real estate) are not entitled to a similar adjustment of the equities. In the White case it does not appear that the mortgagee consented to the conversion of his security. In the instant case the Statsers assented to their improvements being torn down and merged into a completely new building so that such improvements lost their identity under the doctrine of confusion. Under the mechanics' and materialmen's lien law such improvements, in effect, became personal property insofar as the rights of these lien claimants are concerned.

The judgment of the District Court is affirmed insofar as it allows the Oklahoma Employment Security Commission a first lien against the real estate and the improvements. The judgment is reversed insofar as it renders personal judgments against the Statsers; reversed insofar as it allows liens for labor and material against the real estate, and remanded with directions to allow and foreclose such liens only against the improvements separate from the real estate.

WELCH, C. J., and DAVISON, HALLEY and JOHNSON, JJ., concur.

CORN, V. C. J., and BLACKBIRD, J., dissent.